**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| Accela, Inc., | ) | C.A. No. 3:11-cv-3326-CMC |
| | ) | |
| Plaintiff, | ) | **OPINION AND ORDER** |
| | ) | |
| v. | ) | |
| | ) | |
| South Carolina Department of Labor, | ) | |
| Licensing and Regulation, South Carolina | ) | |
| Budget and Control Board, John St. C. | ) | |
| White, Catherine Templeton, and | ) | |
| Marcia Adams, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter came before the court on December 21, 2011, for oral argument on Defendants' motions to dismiss, Dkt. Nos. 8 & 17, and on certain aspects of Plaintiffs' motion to compel arbitration and for a temporary restraining order ("TRO") or preliminary injunction, Dkt. No. 13. For reasons set forth below, the court finds that Plaintiff's filing of an amended complaint, as of right, mooted Defendants' motions to dismiss and vested the court with subject matter jurisdiction. The court, therefore, reaches Plaintiffs' motion, to the extent it seeks injunctive relief, but denies that relief on the merits.

**BACKGROUND**

As alleged in both the original and amended complaints, Plaintiff, Accela, Inc. ("Accela") provides software and related services to state and municipal agencies. Dkt. No. 1 ¶ 9; Dkt. No. 21 ¶ 15. In March 2009, Accela entered three related contracts with Defendant South Carolina Department of Labor, Licensing, and Regulation ("LLR"). Dkt. No. 1 ¶ 10; Dkt. No. 21 ¶ 16. Each of the three contracts included a paragraph which stated that the contract was "governed by the laws of the State of South Carolina," and also that "[a]ny contract or claim arising out of or

relating to" the contract would "be settled by arbitration administered by the American Arbitration Association." *E.g.*,   Dkt. No. 1 ¶¶ 13-15; Dkt. No. 21 ¶¶ 19-21; Dkt. No. 13-2 ¶ 12 (motion to compel arbitration).

The Solicitation for these contracts included the State's standard terms and conditions, which require that all controversies surrounding the solicitation and contract be resolved according to State law, specifically under the South Carolina Consolidated Procurement Code ("Procurement Code"). See Dkt. No. 8-1 n. 2.[1] Most critically for purposes of Plaintiffs' motion to compel arbitration and for related preliminary injunctive relief, the solicitation provides that "all disputes, claims, or controversies relating to the Agreement shall be resolved exclusively by the appropriate Chief Procurement Officer in accordance with Title 11, Chapter 35, Article 17 of the South Carolina Code of Laws." *Id.* (emphasis deleted).

A dispute subsequently arose regarding the above-referenced contracts.  Dkt. No. 1 ¶ 17; Dkt. No. 21 ¶ 23.  In the Spring of 2011, LLR initiated a proceeding before the South Carolina Procurement Review Panel to address this dispute. *Id.*  Accela alleges (and, for purposes of the present motions, the court accepts) that it promptly sought to exercise its "right" to proceed in arbitration by advising LLR and the hearing officer, Chief Procurement Officer White ("CPO White"), of its invocation of the arbitration provisions of the contracts.  Dkt. No. 1 ¶ 19; Dkt. No. 21 ¶ 25.

---

[1] Information relating to the content of the Solicitation is taken from the memorandum in support of the first-filed motion to dismiss.  Dkt. No. 8-1.  The Solicitation is not attached as an exhibit, which would raise concerns if Plaintiff challenged the alleged content of the Solicitation. Plaintiff has not, however, raised any such challenge either by responsive memorandum (none was filed) or in oral argument.  The court, therefore, accepts as true Defendants' factual assertions relating to the Solicitation for purposes of addressing Plaintiff's motion for a TRO or preliminary injunction.

Apparently by agreement, the proceedings before CPO White were stayed in favor of mediation. In any event, no further proceedings (other than mediation and perhaps some discovery) occurred until the Fall of 2011 at which point mediation and any other efforts at amicable resolution had, presumably, concluded.

On November 16, 2011, LLR wrote to CPO White asking that a hearing be set. Dkt. No. 1 ¶ 22; Dkt. No. 21 ¶ 28. Accela immediately responded in writing, objecting to the hearing and again demanding that the dispute be resolved by arbitration. Dkt. No. 1 ¶¶ 25-28; Dkt. No. 21 ¶¶ 33-36. On November 29, 2011, CPO White advised Accela and LLR that he intended to proceed with a hearing on January 11, 2012, "unless and until [he] receive[d] a Court order directing [him] to stay all proceedings." Dkt. No. 1 ¶¶ 31-33; Dkt. No. 21 ¶¶ 39-41; Dkt. No. 13-8 at 2.

Accela responded to CPO White's letter by filing the instant action on December 7, 2011. The originally filed complaint named LLR, CPO White, and the South Carolina Budget and Control Board ("SCBCB") as Defendants.[2] It asserted three causes of action. The first was pursued under the Declaratory Judgments Act, 28 U.S.C. § 2201 *et seq.*, and sought declarations that Accela's rights to arbitration under the contracts are valid and enforceable, in part due to operation of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. ("FAA"), which Plaintiff maintained preempted any contrary state law. Dkt. No. 1 ¶¶ 42-45. The second cause of action was for breach of contract due to failure to abide by the arbitration provision and sought specific performance of that aspect of the contracts. Dkt. No. 1 ¶¶ 46-56. The third was for injunctive relief, seeking to enjoin the

---

[2] The original complaint alleges that CPO White is the Chief Procurement Officer for Construction under the SCBCB. Dkt. No. 1 ¶ 4. The only challenged actions of the SCBCB appear to be those taken by CPO White. *See, e.g.*, Dkt. No. 1 at ¶¶ 31, 40, 44.f.

3

administrative proceedings before CPO White based on essentially the same allegations as set forth in the first two causes of action and relying, particularly, on the FAA. Dkt. No. 1 ¶¶ 57-78.

On December 12, 2011, the SCBCB and CPO White filed a motion to dismiss for lack of subject matter jurisdiction. Dkt. No. 8. These Defendants argued, *inter alia*, that (1) the FAA does not provide an independent basis for the assertion of subject matter jurisdiction, (2) state agencies and state officials sued in their official capacity are immune from suit under the Eleventh Amendment and are not "citizens" subject to suit under the diversity provisions of 28 U.S.C. § 1332, and (3) no other basis for the assertion of subject matter jurisdiction is alleged in the Complaint.

Two days later, Plaintiff filed a motion to compel arbitration. Dkt. No. 13 (filed December 14, 2011). Plaintiff also sought a temporary restraining order ("TRO") and preliminary injunction through the same motion.

In light of the request for a TRO, the court immediately set a hearing to address the motion to dismiss and, as appropriate to address preliminary matters relating to injunctive relief – particularly issues relating to the urgency of the motion. Dkt. No. 14 (entered December 15, 2011). That order also directed Plaintiff to file an expedited response to the motion to dismiss by noon on December 19, 2011.

The remaining Defendant named in the original complaint, LLR, filed a motion to dismiss on December 15, 2011. Dkt. No. 17. That motion made essentially the same arguments for dismissal as in SCBCB's motion.[3]

Shortly after noon on December 19, 2011, Accela filed an amended complaint which relies both on diversity and federal question jurisdiction as well as supplemental jurisdiction. Dkt. No. 21

---

[3] LLR's motion did not address the content of the Solicitation.

4

¶¶ 11-13. Despite continuing to rely on diversity jurisdiction, Accela did not file any response to either motion to dismiss.

The amended complaint added two Defendants, individuals with supervisory responsibility for SCBCB and LLR, and one new cause of action for violation of 42 U.S.C. § 1983. In support of the new cause of action, Accela alleges that each of the individual Defendants acted under color of state law but beyond the scope of their authority in that their actions deprived Accela of its rights to due process under the Fifth and Fourteenth Amendments to the United States Constitution. Dkt. No. 21 ¶¶ 4, 7, 9. Although capacity is not expressly pleaded, these allegations suggest that the individual Defendants are, for purposes of the Section 1983 claim, sued in their individual capacities. The Section 1983 claim appears, nonetheless, to be asserted against all Defendants. The amended complaint also amends the first cause of action, asserted under the Declaratory Judgments Act, to seek, *inter alia*, declarations that "Defendants' conduct violates and will violate the 5th and 14th Amendments of the United States Constitution" and "South Carolina Code §11-35-4230, as written and applied by Defendants, violates the 5th and 14th Amendments of the United States Constitution." Dkt. No. 21 ¶ 70 (j)-(k). Other causes of action are repeated from the original complaint with some amendments.

Upon receipt of the amended complaint, the court directed chambers' staff to contact counsel to determine their positions as to whether the amended complaint mooted the motions to dismiss (albeit without prejudice to filing motions to dismiss the amended complaint on some or all of the same grounds). Defense counsel took the position that the amended complaint did not moot their motions to dismiss. The court, therefore, proceeded with the previously scheduled hearing on

December 21, 2011, addressing the issue of subject matter jurisdiction prior to considering any aspect of the motion for injunctive relief.

### I.     MOTIONS TO DISMISS

Defendants argue that their motions to dismiss survive the amended complaint because, for the amended complaint to be effective, the court must first have acquired subject matter jurisdiction under the original complaint. This, they argue, results from the limited scope of 28 U.S.C. § 1653. In support of their position, Defendants rely on *Newman-Green, Inc.*, *v. Alfonzo-Larraine*, 490 U.S. 826 (1989), and *Saxon Fibers, LLC, v. Larry Wood*, 118 Fed. Appx. 750 (4th Cir. 2005). The court finds both cases distinguishable.

*Newman-Green* held that an appellate court could not allow belated amendment under 28 U.S.C. § 1653, to cure a defect in the existence of diversity jurisdiction *where the facts in existence at the time the complaint was filed did not support the existence of jurisdiction*. *Newman-Green*, 490 U.S. at 831. The court explained that the 1948 amendments to Section 1653 were intended "to expand the power to cure defective allegations of jurisdiction from diversity cases to all cases[,]" but left in place a prior limitation which required that diversity jurisdiction in fact have existed (despite being defectively pleaded) at the time suit was filed.

The amendment in this case is distinguishable from that in *Newman-Green* on two grounds. First, the amendment here adds a federal cause of action. Second, that cause of action is founded on factual allegations in existence when the case was filed. For both reasons, the rule in *Newman-Green* is inapplicable.

*Saxon Fibers* addressed a different issue, whether the court could *grant leave* to amend a complaint to cure a defect in subject matter jurisdiction. The court held that it could not because "a

6

court without subject matter jurisdiction lacks authority to grant a party's amendment motion." 118 Fed. Appx. at 752. The rule in *Saxon Fibers* is inapplicable here because Accela amended its complaint as of right. *See ConnectU, LLC v. Zuckerberg,* 522 F.3d 82 (1st Cir. 2008).

As the First Circuit explained in *ConnectU*, the rule allowing a party to amend as of right allows it to amend a complaint to change the theory of relief, including where that change cures what might otherwise be a defect in subject matter jurisdiction, at least when the amended complaint is filed "before any jurisdictional issue has been raised." *Id.* at 92. With the possible exception of the latter limitation, the rule in *ConnectU* directly supports denying Defendants' motions to dismiss (or finding them moot) because Plaintiff's amendment was as of right and cured the defects in jurisdiction by adding a federal cause of action.

The critical issue, which Plaintiff did not address at oral argument or in any memorandum, is whether Defendants' pre-amendment filing of motions to dismiss in this case precludes reliance on *ConnectU*.[4] Despite *dicta* in *ConnectU* which might suggest a different result, the court finds that Plaintiff's amendment remained an amendment as of right.[5] *See* Fed. R. Civ. P. 15(a)(1) (allowing a party to amend once as a matter of course within 21 days after service of a motion under

---

[4] Plaintiff relied heavily on *Connectu* during oral argument but did not, to the court's recollection, mention the First Circuit's repeated references to the motion being filed "before any jurisdictional issue ha[d] been raised." *Id.* at 92. As these references may suggest a significant limitation on the rule in *Connectu*, counsel should have drawn them to the court's attention especially where, as here, the case was first brought to the court's attention during oral argument.

[5] *ConnectU*'s repeated references to the amended complaint being filed prior to a jurisdictional challenge being mounted are *dicta* as the court was not presented with a post-challenge amendment. The *ConnectU* court does not, in any event, explain why the filing of a jurisdictional motion (as opposed to an answer) would have precluded Plaintiff from curing the defect by filing an amended complaint as such a filing would have been allowed under the version of Rule 15 then in effect. *See* Fed. R. Civ. P. 15(a)(1), Reporter's Comments, 2009 Amendments (discussing amendment of Rule 15(a)(1) which allows a plaintiff to amend its complaint as of right within 21 days after *either* a responsive pleading or a motion to dismiss are filed, whereas earlier rule allowed amendment as of right only after a motion was filed – not after a responsive pleading was filed).

7

Rule 21(b)).  It follows from the rationale in *ConnectU* that Plaintiff's amendment could, if sufficient to support jurisdiction, cure any prior defect.[6]

On its face, the amended complaint asserts at least one claim arising under federal law. Specifically, Plaintiff asserts a claim under 42 U.S.C. § 1983.  This provides the court with subject matter jurisdiction over the action.

## II.    MOTION FOR TRO OR PRELIMINARY INJUNCTION

### A.    STANDARD[7]

A preliminary injunction is "an extraordinary remedy . . . which is to be applied only in [the] limited circumstances which clearly demand it."  *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991) (internal quotation marks omitted) (citation omitted).  The traditional purpose of a preliminary injunction is to "protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits."  *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003).  As held by the Supreme Court and the Fourth Circuit Court of Appeals, to qualify for injunctive relief, a plaintiff must show (1) likelihood it will succeed on the merits; (2) likelihood it will suffer irreparable harm in the absence of a preliminary injunction; (3) that the balance of equities tips in its favor; and (4) that the injunction is in the public interest.  *Winter v. NRDC, Inc.*,

---

[6] The court has searched for but failed to find any case addressing this issue, which is addressed in *ConnectU* only in dicta.

[7] Because Defendants have been given notice of Plaintiff's motion for a TRO or preliminary injunction, the standards and procedures followed are those applicable to a motion for preliminary injunction.  *See generally* Charles A. Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, *Federal Practice & Procedure* § 2951 (noting that "[w]hen the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for a preliminary injunction").

555 U.S. 7, 20 (2008); *Real Truth About Obama v. FEC*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 558 U.S. __ , 130 S. Ct. 2371 (2010).[8]

The *Winter-Real Truth* standard requires the party seeking the injunction to make a "clear showing" that it is likely to succeed on the merits. *Real Truth*, 575 F.3d at 345; *see also Winter v. NRDC*, at 555 U.S. at 22. This standard compels the moving party to show that it is *likely* to prevail. Regardless of the balance of hardships, it is insufficient for the party to show only that "grave or serious questions are presented" in the litigation. *Compare Real Truth*, 575 F.3d at 346 *with Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189, 196 (4th Cir. 1977).

Second, the moving party must make a clear showing that it is likely to be irreparably harmed if preliminary relief is denied. To meet this test, the party must show more than a mere *possibility* of harm. *Winter*, 555 U.S. at 21. Third, the moving party must show that the balance of equities tips in its favor. *Id*. at 21, 26. Fourth, the district court must consider whether grant or denial of the injunction is in the public interest. The court must give "particular regard" to the public consequences of granting a preliminary injunction. *Id.* at 24; *Real Truth*, 575 F.3d at 347. The Fourth Circuit no longer recognizes a "flexible interplay" among these criteria. Instead, each

---

[8] In *Real Truth*, the Fourth Circuit modified its prior approach, which required district courts to balance the likelihood of irreparable harm to each party as a "first step" in its analysis, and then to consider the likelihood of success only as a secondary matter, dependent upon the outcome of the initial balance-of-hardships test. *See Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d at 195-96. The Supreme Court vacated *Real Truth* and remanded the case for further consideration in light of *Citizens United v. Federal Election Comm'n*, 558 U.S. ___, 130 S. Ct. 876 (2010), which related to corporate electioneering communications under the First Amendment. *See Real Truth About Obama, Inc. v. FEC*, 558 U.S. __, 130 S. Ct. 2371 (2010). The Fourth Circuit remanded the First Amendment-related aspects of the case to the district court but reissued, *inter alia*, the portion of the 2009 opinion setting forth the *Winter-Real Truth* preliminary injunction standard. *See Real Truth About Obama, Inc. v. FEC*, 607 F.3d 355 (4th Cir. 2010).

requirement must be fulfilled as articulated. *Real Truth*, 575 F.3d at 347 (quoting *Blackwelder*, 550 F.2d at 196).

### B.     DISCUSSION

**Likelihood of Success on the Merits**.

Accela's claims face numerous obstacles which suggest a low likelihood of success on the merits. Accela is, for example, unlikely to be able to establish that its form contracts control over the terms set forth in the Solicitation and required by South Carolina law. According to unchallenged statements in the SCBCB and CPO White's motion to dismiss:

> The Solicitation for this contract included the State's standard terms and conditions, which require that all controversies surrounding the solicitation and contract, are resolved according to State law by the South Carolina Consolidated Procurement Code. [n.2 deleted] Art. X. §10 of the South Carolina Constitution "limits claims against the State to those allowed by the legislature . . . ." *Unisys Corp. v. S.C. Budget & Control Bd. Div. of Gen. Servs.*, 346 S.C. 158, 170, 551 S.E.2d 263, 270 (2001). Consistent with this section of the State's constitution, the South Carolina General Assembly enacted Section 11-35-4230, which "limit[s] suits on contracts with the State to the forum provided in §11-35-4230." *Id.* at 271. Accordingly and as a matter of law, no state official had authority to contract with Accela to use any other method of dispute resolution. [n.3 deleted]

Dkt. No. 8-1 at 2-3.[9]

Note 2 (deleted from quotation above), stated that the Contract language in the Solicitation included the following:

> (1)   Choice-of-Forum. All disputes, claims, or controversies relating to the Agreement shall be resolved exclusively by the appropriate Chief Procurement Officer in accordance with Title 11, Chapter 35, Article 17 of the South Carolina Code of Laws (emphasis added) or in the absence of jurisdiction, only in the Court of Common Pleas for, or a federal court located in, Richland County, State of South

---

[9] As noted above, Plaintiff failed to file any response to this motion to dismiss, choosing, instead, to file an amended complaint. This leaves these Defendants' assertions of fact unchallenged and their arguments unanswered.

10

> Carolina. Contractor agrees that any act by the Government regarding the Agreement is not a waiver of either the Government's sovereign immunity or the Government's immunity under the Eleventh Amendment of the United States Constitution.

Dkt. No. 8-1 at 2.

> Note 3 (deleted from quotation above), explained the *Unisys* ruling as having determined that
>
> > the "exclusive means" provision of S.C. Code Ann. §11-35-4230 overrides a contract provision to the extent that it requires that any suit on the contract be brought in another forum. After observing that "Contractual relationships formed pursuant to the Procurement Code are highly regulated contracts[,]" the Court expressly held "We now hold contracts formed pursuant to the Procurement Code are deemed to incorporate the applicable statutory provisions and such provisions shall prevail." *Id*. at 346, S.C. 171, 551 S.E.2d at 271.

Dkt. No. 8-1at 3.

These arguments suggest a strong likelihood that Accela will not prevail in establishing a right to enforce the arbitration provisions in its contracts.[10] Additional arguments suggested in Defendants' motions to dismiss (*e.g.,* reliance on an Eleventh Amendment defense on behalf of the State and individuals sued in their official capacity) and the fact that the contract at issue is with the State, not any individual, present other obstacles to enforcement of the arbitration provision given that the relief sought directly impacts the State and its rights under the contract. Finally, the court anticipates non-frivilous challenges to the viability of Plaintiff's Section 1983 claims. The various defenses already advanced and clearly anticipated collectively suggest that Accela has a low likelihood of success on the merits.

---

[10] Notably, the first sentence of each of the three paragraphs on which Accela relies for its alleged right to arbitration expressly states that South Carolina law controls. South Carolina law, however, limits the remedies available under contracts with the State to those available under the Procurement Code. Thus, Plaintiff's own contracts arguably contain an internal inconsistency which may present an additional obstacle to enforcement of its claimed right to arbitration.

**Irreparable Harm**.  The irreparable harm alleged is Accela's loss of its "right" to resolve the claim by arbitration.  For purposes of this motion, the court will assume without deciding that loss of the right to proceed by arbitration constitutes irreparable harm.

**Balance of the Equities**.  The State has an interest (as embodied by the interests of two State agencies and three State officials) in having disputes resolved in accordance with the terms of the Procurement Code.  Accela has an interest in enforcing contract terms providing for arbitration. These interests are at least equal and arguably tip in the State's favor assuming Accela was given notice of the State's intent through the Solicitation as indicated above.

**Public Interest**.  To the extent the public interest is a factor, it is largely aligned with the State's position as private entities contracting with the State should not be allowed to modify the terms of a Solicitation through inconsistent terms in a contract responsive to that Solicitation.

## CONCLUSION

For the reasons set forth above, the court finds that Plaintiff's amended complaint mooted the Original Defendants' motions to dismiss and vested the court with subject matter jurisdiction over this action.  The court, therefore, reaches Plaintiff's motion to the extent it seeks a temporary restraining order or preliminary injunction but declines to grant such relief for failure to satisfy the applicable standards.

IT IS SO ORDERED.

 s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
December 28, 2011

12